REID, Judge.
Plaintiff, Joseph Milligan, brought this suit for workmen’s compensation benefits against his employer’s insurer, Fidelity and Casualty Company of New York. He was an employee of Hebert Brothers Engineers of Plaquemine, Louisiana, at the time of his injury.
Plaintiff’s alleged injury was a right inguinal hernia as a result of a slip and fall accident while acting within the scope of his employment with Hebert Brothers. He sought total, permanent disability, less the credit of $1487.50 which had been paid on his compensation. He claims that the hernia recurred three times.
Defendant filed an answer admitting the accident, admitting that the hernia originally occurred or on about September 19, 1962, *105 recurred on or about January 7, 1963 and on the third time about April 8, 1963. They further alleged that the last hernia or the third one, was surgically repaired on August 1, 1963 by Dr. Charles H. Mosely by whom he was discharged on October 1, 1963. Defendant paid compensation until October 31, 1963 and in addition paid some $984.75 medical bills. The defense is of course that the plaintiff had fully recovered from the accident and was able to resume his work. The case was duly tried in the Lower Court, and judgment was rendered on January 14, 1965 awarding plaintiff compensation at the rate of $35.00 a week from October 1, 1963 until December 1, 1963 plus interest, costs and unpaid medical bills, and fixing the fees of the doctors who testified in the case.
From this judgment plaintiff has appealed to this Court.
According to the testimony plaintiff was employed by Hebert Brothers Engineers as a general handyman and clean-up man for several years prior to the time of his accident. The accident happened on September 18, 1962 when he slipped and fell while cleaning mud and slush from the side of a canal. He was first seen by Dr. M. F. Currier of Plaquemine who made a cursory examination and diagnosed his case as a tenderness in the cervical spine, right shoulder, right hip, lumbar spine area. Several days later he was seen by Dr. Rhodes J. Spedale, who was the regular physician of the defendant employer. At that time Dr. Spedale discovered that plaintiff had a right inguinal hernia which he repaired. After a period of convalescence plaintiff returned to his work. He worked for a few weeks and on January 7, 1963 his right inguinal hernia recurred.
Dr. Spedale again repaired it and on April 8, 1963 returned plaintiff to work. However, plaintiff continued to complain of pain, was not satisfied with his condition, and consulted Dr. Bertrand Tyson, who advised plaintiff that he still had a right inguinal hernia. Plaintiff thereafter was sent by an adjuster to Dr. M. F. Currier, who confirmed Dr. Tyson’s finding of the recurrence of the hernia, and recommended an operation.
Dr. Mosely operated on plaintiff and repaired the hernia on August 1, 1963 and discharged plaintiff as healed on October 1, 1963. At that time he felt that the plaintiff was able to discharge all the duties of his previous employment.
All four of the doctors testified at the trial of the case. Dr. Mosely who was admitted to be an expert in the field of surgery testified that he performed the operation on August 1, and discharged the plaintiff as healed on October 1st. He gave as his unqualified opinion that the hernia operation was completely successful and that as of the date of the discharge plaintiff could return to his work. Subsequently on October 3, 1964 Dr. Mosely again examined plaintiff and found that the hernia had not recurred, and that plaintiff had made a complete recovery and could do anything he had done before surgery.
He further testified that the patient will have a stronger abdominal wall in that area than he had before the operation. He advised Milligan to return to his work, feeling that this would be a benefit to him. He also testified that plaintiff might have some aching in the area of the surgery on occasions, particularly on changes of the weather. This was not an uncommon happening but that it would not prevent Milli-gan’s working in his employment.
Dr. Tyson testified first for the plaintiff. He testified that he first saw plaintiff as a patient on April 18, 1963 at which time he complained of a “knot in his right side” which pained him occasionally. He found a well healed scar from previous surgery and the second hernia in the right inguinal area. He further testified that plaintiff complained of some pain in the surgical area on changes of the weather and when he walked long distances. He testified that it was purely speculation that there was any medical basis for these complaints. *106 He concurred with Dr. Mosely’s opinion that a patient is generally released eight weeks following the operation. He further testified that there was possibility of ad-hesions and other complications which could arise as a result of the hernia but nothing definite.
Dr. Currier testified that he made the initial examination but after that turned the patient over to Dr. Mosely. He saw the plaintiff after the third hernia operation and considered it successful. He did acknowledge that hernia repairs may some times be followed by complications.
Dr. Spedale who operated twice on plaintiff for the first two hernias as a result of this accident testified that he could not make a diagnosis of any complications. He testified that he had performed the operations and the subsequent re-occurences was an event which happened in very, very rare instances. He testified that there could be complications of a pinched nerve but that any unusual tightness in the surgical area would not prevent the patient from working. He did recommend a longer convalescence than the two months allowed by Dr. Mosely. He thought from three to four months. The Trial Judge seemed to have accepted his testimony and increased the workmen’s compensation two months at the trial on December 1st.
Plaintiff after the last operation took the position that the hernia might re-occur and complained of pain when he walked any distance and on changes in the weather.
The testimony in the record from plaintiff’s immediate boss and two of his coworkers was that the work he did was light and not considered heavy work. He mowed the lawn, cleaned up the yard, did general handyman work around the plant.
Plaintiff relies on the case of Wood v. Peoples Homestead & Savings Association, La.App., 177 So. 466, and Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175. Studying these cases we do not believe they are in point with the case at Bar. In those cases there is no question but what the hernia was unrepaired, the man was doing much heavier work, and also turns on the proposition that defendant in each case set up the fact an operation would have cured the condition. In both cases the Court held that the man was not obligated to submit to an operation. Plaintiff further relies on the case of Thomas v. Gates, Inc., La.App., 157 So.2d 263. This case involves a sawmill laborer who lost a portion of his index finger and developed a neuroma in the remaining stump. The Court held that the neuroma prevented him from working at his usual vocation but the facts of this case are entirely different from the facts in the present case.
Defendant relies on the case of Moreau v. Employers Liability Assurance Corp., La.App., 180 So.2d 835. This case was handed down by our Brethren of the Third Circuit and we believe correctly sets forth the law in the cases such as the instant case. In the Moreau case, supra, the plaintiff had a hernia operation which was successful and he was able to perform all his former duties, including those which required heavy lifting and straining. Plaintiff, however, claimed that he experienced a numbness and a burning sensation in the groin, which prevented him from performing his duties of an automobile mechanic. There is a question in this case whether the pain which plaintiff experienced was of such a nature as to render him totally and permanently disabled, within the meaning of the Louisiana Workmen’s Compensation Act. In this case the Third Circuit quoting from the case of Glidden v. Alexander Concrete Co. Inc. et al., 242 La. 626, 137 So.2d 894, a Supreme Court case, held as follows:
“ ‘It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or ‘good-as-new’ recovery essential before an employer may stop compensation payments. The pain must be substantial *107 enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job, or, where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health, (emphasis added)’ ”
They further quote from Williams v. Travelers Insurance Company, La.App., 157 So.2d 356 which held as follows:
“ * * * A compensation claimant is not entitled to compensation for disability in every instance where there is residual discomfort following an industrial accident; the residual pain must be substantial enough to be disabling within the meaning of our compensation act. * * * (emphasis added)”
Lastly, they cite Wilson v. Fogarty Brothers Transfer Company, Inc. et al., La.App., 126 So.2d 6, which held as follows:
“Our conclusion is that, in order that recovery be permitted where the employee continues at work, there must be considerable pain and that the facts of each case must be looked to to determine whether the pain in that case is sufficiently great to justify the award of compensation. * * * (emphasis added)”
The Trial Judge found that plaintiff had recovered from the operation and that what little pain he suffered was normal, and would not prevent him from performing his former duties.
The Trial Judge with oral reasons for judgment awarded plaintiff workmen’s compensation from October 1, 1963 up to and including December 1, 1963 plus all medical expenses incurred by him from the date of the accident until December 1, 1963; the treatment of the injuries resulting from the accident and such medical expenses as had not been paid by the defendant, resulting from the accident, all with legal interest from judicial demand until paid, and defendant to pay all costs including the fees of the witnesses that were fixed.
We do not feel that the Trial Judge committed manifest error or abused his discretion. Accordingly, the judgment of the Lower Court is affirmed.
Affirmed.